**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| **R.O.T.,** | : | |
| | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **Case No. 4:26-cv-366-CDL-CHW** |
| | : | **28 U.S.C. § 2241** |
| **Warden, STEWART DETENTION CENTER,** | : | |
| | : | |
| | : | |
| **Respondent.** | : | |
| | : | |

## ORDER AND RECOMMENDATION

Before the Court is Respondent Warden of Stewart Detention Center's motion to dismiss (Doc. 5) Petitioner R.O.T.'s application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). For the following reasons, it is **RECOMMENDED** that Respondent's motion to dismiss (Doc. 5) be **GRANTED**.

## BACKGROUND

Petitioner, a native and citizen of Ethiopia, was admitted into the United States on December 9, 1987. (Doc. 5-2); (Doc. 11-1, ¶ 4). Petitioner's status was adjusted to that of a Lawful Permanent Resident ("LPR") on August 24, 1989. (Doc. 5-3). On March 3, 2008, Petitioner was convicted in the Circuit Court of Escambia County, Florida, of felony battery with great bodily harm and tampering with a witness or informant. (Doc. 5-2, p. 2). Petitioner was sentenced to forty-two months imprisonment. (Doc. 5-1, ¶ 6).

On April 17, 2008, Immigrations and Customs Enforcement, Enforcement and Removal Operations ("ICE/ERO") issued Petitioner a Notice to Appear ("NTA") charging him removability under 8 U.S.C. § 1227(a)(2)(A)(iii). (Doc. 5-4). Petitioner appeared before an Immigration Judge

("IJ") on March 2, 2009, where he conceded the charge of removability. (Doc. 5-1, ¶ 8). Petitioner then filed an application for relief from removal on October 30, 2009. (*Id.*, ¶ 9). On July 8, 2010, Petitioner entered ICE/ERO custody. (*Id.*, ¶ 10). The IJ denied Petitioner's application for relief on October 21, 2010, and the decision became final on November 20, 2010, after Petitioner did not appeal that decision. (Docs. 5-5; 5-6). On December 13, 2010, ICE/ERO submitted a Travel Document Request ("TDR") to the Consulate of Ethiopia and released Petitioner from custody under an Order of Supervision ("OSUP") on February 18, 2011. (Doc. 5-1, ¶ 130; (Doc. 5-6).

Petitioner re-entered ICE/ERO custody on August 26, 2025. (Doc. 5-1, ¶ 14). ICE/ERO submitted a TDR to Ethiopia on December 2, 2025. (*Id.*, ¶ 15). On January 2, 2026, ICE/ERO served Petitioner with a Notice to Alien of File Custody Review, and the proof of service states that Petitioner refused to sign. (Doc. 5-8). On January 21, 2026, ICE/ERO served Petitioner with a Decision to Continue Detention, and the form indicates that Petitioner did not want a personal interview.[1] (Doc. 5-7, p. 3). A telephone interview for Petitioner with the Embassy of Ethiopia was scheduled for March 3, 2026, but the embassy canceled the interview. (Doc. 5-1, ¶ 17). ICE/ERO then served Petitioner with a notice of revocation of release on March 17, 2026, which again states that Petitioner refused to sign. (Doc. 5-9). That notice also states that Petitioner would be afforded an informal interview on March 16, 2026—the day before the proof of service. (*Id.*, p. 2). On March 17, 2026, a deportation officer conducted an informal interview of Petitioner, at which Petitioner indicated that he was confused as to why he was being detained. (Doc. 5-10).

On March 19, April 29, and June 8, 2026, ICE/ERO requested updates from ICE Headquarters regarding the status of rescheduling Petitioner's interview with Ethiopia. (Doc. 11-1,

[1] The form does not contain a signature block for Petitioner, and there is simply an "X" marked in the section for denying an interview. (Doc. 5-7, p. 3).

¶ 5). ICE/ERO facilitated an interview between Petitioner and the Ethiopian consulate on July 20, 2026. (*Id.*, ¶ 7). As of September 14, 2026, the date of Deportation Officer Justin Jones' signed declaration, the TDR remained pending with Ethiopia. (*Id.*, ¶ 9).

Petitioner filed this habeas action pursuant to Section 2241 on March 9, 2026. (Doc. 1). Respondent filed this motion to dismiss on March 31, 2026. (Doc. 5). Petitioner filed a response to that motion on April 14, 2026. (Doc. 9). Following the Court's order for status report on September 2, 2026, Respondent filed a response on September 15, 2026. (Docs. 10; 11). This motion is ripe for review.

## DISCUSSION

In his Section 2241 petition, Petitioner presents seven grounds for relief. In Count One, Petitioner alleges that his detention violates the Due Process Clause of the Fifth Amendment because Respondent did not have a legitimate reason to revoke Petitioner's OSUP. (Doc. 1, pp. 16–17). Petitioner argues in Count Two that the revocation of his OSUP violates due process because he was not given prior notice and an interview. (*Id.*, pp. 16–17). In Count Three, Petitioner alleges a violation under the Administrative Procedures Act ("APA") due to Petitioner's unlawful detention and for Respondent's failure to provide a notice of intent to revoke Petitioner's OSUP. (*Id.*, p. 18). Finally, Petitioner argues in Count Four that his removal is not reasonably foreseeable and that his detention violates the Immigration and Nationality Act ("INA"). (*Id.*, pp. 18–19).

Respondent argues in his motion to dismiss that Petitioner's claims regarding his OSUP should be dismissed because they are not cognizable in a habeas and are moot. Alternatively, Respondent asserts that even if Petitioner was entitled to relief, release is not the appropriate

remedy. Respondent argues also that Petitioner has failed to show that he is entitled to relief under *Zadvydas v. Davis*, 533 U.S. 678 (2001).

## I. Counts One, Two, and Three

Petitioner argues that ICE violated its own regulations and his due process rights by failing to provide him with prompt notice and an informal interview when ICE unlawfully revoked Petitioner's OSUP.

Before proceeding to the merits of Petitioner's OSUP claims, however, the Court must determine whether it has jurisdiction. *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). In other words, this Court may only hear a case over which it has subject matter jurisdiction. *See id.* There are generally three ways a party may establish subject matter jurisdiction in federal court: "(1) jurisdiction pursuant to a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332." *Hallett v. Ohio*, 711 F. App'x 949, 950 (11th Cir. 2017) (per curiam) (citation omitted). "[T]he party invoking the court's jurisdiction bears the burden of proving the existence of federal jurisdiction," and if "the district court lacks subject matter jurisdiction, it has no power to render a judgment on the merits and should dismiss the complaint . . . ." *Id.* Petitioner argues that the Court has jurisdiction pursuant to the Suspension Clause of the United States Constitution, 28 U.S.C. § 2241 (habeas corpus), and 28 U.S.C. § 1331. (Doc. 1, p. 3).

Section 1252 provides for the judicial review of orders of removal. Section 1252(a)(2)(B)(ii) provides that

> [n]otwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision . . . no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii).

Section 1252(g) similarly provides that

> except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter

8 U.S.C. § 1252(g).

Section 1252(g) is "narrow[ly] read[]" so that it blocks courts from exercising jurisdiction over only "three discrete actions[: the] 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 487 (1999) (quoting Section 1252(g)).

Accordingly, Section 1252(g) deprives the Court of "subject-matter jurisdiction over Respondent['s] decision to revoke the OSUP, but not [ICE's] purported failure to comply with their own procedures in doing so." *Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *4 (S.D. Fla. Aug. 8, 2025). "The decision to revoke Petitioner's OSUP, for the stated purpose of executing his removal order, clearly falls under the purview of [Section] 1252(g)." *Id.* As such, the Court lacks jurisdiction to review Count One because that count alleges only ICE's decision to revoke Petitioner's OSUP, and Count One should be dismissed.

But the Court does have jurisdiction to review whether ICE adhered to its own policies and procedures in its revoking Petitioner's OSUP. *Kurapati v. U.S. Bureau of Citizenship & Immigr. Servs.*, 775 F.3d 1255, 1262 (11th Cir. 2014); *see Barrios*, 2025 WL 2280485, at *5; *see also Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 150–55 (W.D.N.Y. 2025); *Zhu v. Genalo*, No. 1:25-CV-06523 (JLR), 2025 WL 2452352, at *3–4 (S.D.N.Y. Aug. 26, 2025). As such, neither Sections 1252(g) or 1252(a)(2)(B)(ii) bar Petitioner's challenge to the manner in which ICE effected his OSUP revocation to the extent Petitioner asserts the revocation was done without adequate process and in violation of ICE's own regulations.

The plain language of 8 C.F.R. § 241.4(l)(1) provides that

> [a]ny alien . . . who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. . . . Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

8 C.F.R. 241.4(l)(1).

That regulation makes clear that ICE was required to provide Petitioner with notice of the reasons for revocation and an informal interview.

Petitioner presents sufficient evidence that ICE failed to comply with the requirement to provide "an initial informal interview promptly after his [] return to Service custody . . . ." § 241.4(I)(1). Petitioner most recently entered ICE/ERO custody on August 26, 2025. (Doc. 5-1, ¶ 14). An OSUP revocation was not completed until March 16, 2026, for Petitioner, which Petitioner refused to sign. (Doc. 5-9). Respondent did not provide Petitioner with that notice and an interview until the following day. (Docs. 5-9; 5-10). Any attempt to provide Petitioner with notice and an interview took place almost seven months after Petitioner's initial detention in

August 2026—and eight days after he filed this habeas action. (*Id.*); (Doc. 1). This seven-month gap is distinguishable from precedent and fails to meet the due process requirements under 8 C.F.R. § 241.4.

In *H.S. v. Warden, Stewart Det. Ctr.*, this Court found that ICE did not violate § 241.4. No. 4:26-CV-131-CDL-CHW, 2026 WL 1811463 (M.D. Ga. Apr. 22, 2026), report and recommendation adopted sub nom., *H.S. v. Streeval*, No. 4:26-CV-131 (CDL), 2026 WL 1809764 (M.D. Ga. June 23, 2026). ICE detained H.S. in December 2025, ICE revoked his OSUP in December 2025, and H.S. was interviewed in January 2026. *Id.* at *1, 5. On *P.N.B v. Warden, Stewart Det. Ctr.*, this Court also found that ICE did not violate § 241.4. No. 4:25-CV-515-CDL-CHW, 2026 WL 1671444 (M.D. Ga. Mar. 25, 2026), report and recommendation adopted, No. 4:25-CV-515-CDL-CHW, 2026 WL 1670826 (M.D. Ga. June 9, 2026). P.N.B. entered ICE custody on December 22, 2025, P.N.B.'s OSUP was revoked on January 5, 2026, with a "refused to sign" marker for P.N.B., and ICE interviewed P.N.B. on January 5, 2026. Both H.S. and P.N.B. have roughly a month time-frame between the petitioner's detainment, OSUP revocation notice, and interview.

Petitioner was not afforded the same due process. While Petitioner may have been served a decision to continue detention and a notice of custody review, these came before Petitioner received his OSUP revocation and interview on March 17, 2026. A seven-month delay does not constitute a "prompt" interview under § 241.4. Nevertheless, Petitioner was eventually afforded the remedy available to him: an informal interview to contest his OSUP revocation.[2] As such, Counts Two and Three should be dismissed.

---

[2] As Petitioner argues, some courts have found that an appropriate remedy for a § 241.4 violation is release from custody. *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267 (D. Or. Aug. 21, 2025) (ordering release after finding ICE failed to follow its own regulations). As this Court has reasoned on

### II. Count Four

Finally, Respondent urges the Court to dismiss Count Four, arguing that Petitioner has failed to meet his evidentiary burden under *Zadvydas* to show that there is no significant likelihood of removal in the reasonably foreseeable future.

Under § 1231(a), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). This removal period begins on the latest of three triggering dates:

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* at §§ 1231(a)(2)(B)(i)–(iii).

Detention during this 90-day "removal period" is mandatory. *Id.* at § 1231(a)(2)(A). This removal period shall be extended "and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." *Id.* at § 1231(a)(1)(C). Detention may continue beyond the 90-day period if it is "reasonably necessary" to effectuate removal. *Zadvydas*, 533 U.S. at 689; 8 U.S.C. § 1231(a)(6).

Although § 1231(a)(6) does not limit the length of post-final order of detention, the Supreme Court of the United States determined in *Zadvydas* that detention for six months is

---

numerous occasions, however, the appropriate remedy would be that ICE/ERO afford Petitioner notice and an interview, not release from custody. *See H.S.*, 2026 WL 1811463, at *5 n.3.

presumptively reasonable. *Zadvydas*, 533 U.S. at 701. Following this six-month period, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable further, the Government must respond with evidence sufficient to rebut that showing." *Id.* The United States Court of Appeals for the Eleventh Circuit has explained that for an alien to state a claim under *Zadvydas*, he must show "(1) that the six-month period, which commences at the beginning of the statutory removal period, has expired when the § 2241 petition is filed; and (2) 'evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Gozo v. Napolitano*, 309 F. App'x 344, 346 (11th Cir. 2009) (quoting *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002)). Only if a petitioner makes both of these showings does the burden shift to the respondent to rebut with evidence. *Zadvydas*, 522 U.S. at 701.

Respondent argues that Petitioner's *Zadvydas* claim be dismissed because Petitioner has not met the second prong of *Zadvydas* by providing "evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale*, 287 F.3d at 1052. Respondent correctly concedes *Zadvydas*'s first prong, that Petitioner has been detained longer than six months, and argues that Petitioner has not provided *any* evidence as to the second prong. (Doc. 11, p. 12).

Based on the record in this case, Petitioner has not met his burden of showing evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. ICE/ERO had submitted a TDR to the Ethiopian consulate on December 2, 2025. (Doc. 5-1, ¶ 15). On July 20, 2026, "ICE/ERO facilitated an interview between Petitioner and the Ethiopian consulate." (Doc. 11-1, ¶ 7). As of August 3, 2026, the consulate was apparently still reviewing that request. (Doc. 11-1, ¶ 8). Plaintiff's assertion of the passage of nine months

since ICE/ERO submitted a travel document request is not sufficient to shift the burden to Respondent. *Ortiz v. Barr*, No. 20-CV-22449, 2021 WL 6280186, at *5 (S.D. Fla. Feb. 1, 2021) ("[T]he mere existence of a delay of Petitioner's deportation is not enough for Petitioner to meet his burden." (citations omitted)), report and recommendation adopted, No. 20-22449-CIV, 2022 WL 44632 (S.D. Fla. Jan. 5, 2022). Even if the burden were shifted to Respondent, Respondent has shown a significant likelihood or removal in the reasonably foreseeable future. In support of his argument, Respondent provided a declaration of Justin Jones, a Deportation Officer employed by DHS and ICE/ERO. (Doc. 11-2). Mr. Jones declared that the TDR is currently pending with Ethiopia, ICE/ERO is currently removing aliens to Ethiopia, and ICE/ERO will effectuate Petitioner's removal to Ethiopia once they receive the appropriate travel documents. (*Id.*, ¶ 9). Accordingly, the record evidence is sufficient to show a significant likelihood of removal in the reasonably foreseeable future.

## CONCLUSION

For the reasons discussed herein, it is **RECOMMENDED** that Respondent's motion to dismiss (Doc. 5) be **GRANTED**.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. Any objection is limited in length to TWENTY (20) PAGES. See M.D. Ga. L.R. 7.4. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 25th day of September, 2026.

s/ Charles H. Weigle__________
Charles H. Weigle
United States Magistrate Judge